JOHN HUTKOFF, Respondent, *v.* WILLIAM J. DEMOREST et al., Appellants.

EMILY R. CALDWELL et al., Respondents, *v.* FRANKLIN J. WALL, Appellant.

GOTTHELF GREINER, Respondent, *v.* JETTEL H. HAMBURGHER, Appellant.

The provision of the act of 1886 (Chap. 418, Laws of 1886) amendatory of the Code of Civil Procedure, which declares that the City Court of New York (formerly the Marine Court) shall be deemed a superior city court within

Statement of case.

the meaning of the provision of the Code of Civil Procedure (§ 190) providing for appeals to this court, and which thus authorizes appeals direct to this court from judgments of the General Term of said court, is violative of the provision of the State Constitution (Art. 6, § 12) which declares that the Court of Common Pleas of the city and county of New York shall be continued with the powers and jurisdiction it had at the time of the adoption of the judiciary article of the Constitution; as said act takes away from the Court of Common Pleas the power to review the decisions of the Marine Court, which it had at the time of the adoption of the judiciary article of the Constitution.

Power to pass said act was not given to the legislature by the provision of said judiciary article (Art. 6, § 22), which gives it power to "authorize the judgments, decrees and decisions of any court of original civil jurisdiction, established in any city, to be removed for review directly into the Court of Appeals." That provision was intended to embrace only courts of record established in cities which were in existence at the time of the adoption of said article (December, 1869), and the Marine Court was not a court of record in a legal sense of the term until 1872.

*It seems* the Constitution does not contemplate the establishment by the legislature of other superior city courts than those enumerated therein.

(Argued October 19, 1886; decided October 26, 1886.)

THESE were motions to dismiss appeals from judgments of the General Term of the City Court of New York, on the ground, among others, that the provision of the act (Chap. 418, Laws of 1886) declaring that the City Court of New York shall be deemed a superior city court, and thereby authorizing an appeal direct from its judgment to the Court of Appeals, is unconstitutional.

*Jas. R. Marvin* for appellants Demorest *et al.* The Court of Appeals may lawfully take the jurisdiction the act (Laws of 1886, chap. 418) confers. (Const., art. 6, § 6; *Butterfield* v. *Radde,* 58 N. Y. 490; *People* v. *Gardner,* 45 id. 812; *Same* v. *Norton,* 59 Barb. 169; *De Hart* v. *Hatch,* 3 Hun, 375; *People* v. *Mayor, etc.,* 79 N. Y. 589, 590.) The act in question, so far as this case is concerned, takes nothing from the Common Pleas which it had in January, 1870, when the Constitution went into effect. (McAdams' Marine Court Prac. [2d ed.] 4; Cooley on Const. Lim. [3d ed.] 177, 178.) The State legislature had power to pass this act. (*People* v. *Draper,*

15 N. Y. 543; *Thorpe* v. *Rutland & B. R. R. Co.*, 27 Vt. 142; 1 Abb. N. Dig. 118.) The right of appeal is a mere remedial power subject to change at the will of the legislature. (Const., art. 6, § 6 ; Potter's Dwarris on Stat. 471, 472.) The act is constitutional in all its parts, an appeal is not a vested right, but a mere legislative privilege subject to change by it at will. (*Grover* v. *Cook*, 1 N. Y. 536; *In re Palmer*, 40 id. 561 ; 64 id. 58; 67 id. 447 ; *People* v. *Fowler*, 55 id. 675 ; *Neuzler* v. *People*, 58 id. 516.)

*Gibson Putzel* for appellant Hamburger.

*David Leventritt* for respondent Hutkoff. It is only in cases where the meaning of statutes is doubtful that the courts are authorized to indulge in conjectures as to the intention of the legislature, or to look to consequences, in the construction of the law; when the meaning is plain and unambiguous, the act must be carried into effect according to the language, otherwise the courts would be assuming legislative authority. (*Woodruff* v. *Mech. Bk.*, 25 Wend. 673; *Bowen* v. *Newell*, 8 N. Y. 190; *Higgins* v. *Moore*, 34 id. 417 ; *Easton* v. *Pickersgill*, 55 id. 310; *Fellows* v. *Mayor, etc.*, 17 Hun, 249 ; *Scott* v. *Reid*, 10 Pet. 524 ; Dwarris on Stats., note 3, ed. 1875; *People, ex rel. Hall*, v. *Supervisors of Greene*, 13 Abb. N. C. 421; *McCluskey* v. *Cromwell*, 11 N. Y. 593 ; *Purdy* v. *People*, 4 Hill, 397, 403 ; *Waller* v. *Harris*, 20 Wend. 561, 562 ; Dwarris on Stats. [Potter's ed.] 193.) Where the language of a statute is definite and has a precise meaning, it must be presumed to declare the intent of the legislature, and it is not allowable to go elsewhere in search of conjecture to restrict or extend its meaning. (*Johnson* v. *Hudson R. R. R. Co.*, 49 N. Y. 455; *Benton* v. *Wickwire*, 54 id. 226; *Hudson Iron Co.* v. *Alger*, id. 173–175.) In the construction of a statute grammatical rules do not prevail over the manifest sense of .the language. (*People* v. *Gates*, 56 N. Y. 387.)

*Henry Wehle* and *Charles Goldzier* for respondent Grener. The law enacted by the legislature, as set forth in chapter 418,

Laws of 1886, which provides that the City Court of New York shall be deemed a superior city court, and thereby giving this court the exclusive right to review judgments from its General Term, is unconstitutional and void. (Const., art. 6, § 12; *Alexander* v. *Bennett*, 60 N. Y. 206.) The legislature could no more interfere with the privilege vouchsafed to every suitor of having his appeal to the Court of Common Pleas than they could with the right of a suitor who had selected his tribunal to have the cause held in the tribunal of his selection. (*Alexander* v. *Bennett*, 60 N. Y. 206.)

RAPALLO, J. Article 6 of the Constitution of the State, was adopted by the people at the November election in 1869, and declared adopted by the board of State canvassers, December 6, 1869. One of its provisions was, that the Superior Court of the city of New York, and the Court of Common Pleas of the city and county of New York, the Superior Court of Buffalo and the City Court of Brooklyn, were continued with the powers and jurisdiction they then severally had, and such further civil and criminal jurisdiction as might be conferred by law. (Art. 6, § 12.)

In the case of *Popfinger* v. *Yutte* (102 N. Y. 38) we decided that this provision superseded section 12 of article 14, which declared that those courts should remain *until otherwise directed by the legislature*, with their then present powers and jurisdiction; that after the adoption of article 6, it was beyond the power of the legislature to take from those courts any of the powers or jurisdiction which they had at the time of the adoption of the article, and that consequently subdivision 5 of section 263 of the Code of Civil Procedure, which purported to confine their jurisdiction in judgment creditor's actions to cases when the judgment on which the action was founded was recovered in the same court, was inoperative and void, because at the time of the adoption of article 6 those courts had general jurisdiction in equity within their territorial limits, co-extensive with that of the Supreme Court, and subdivision 5 purported to take away part of that jurisdiction by limiting

it, in judgment creditor's suits, to judgments recovered in the same court. At the time of the adoption of article 6, the jurisdiction and powers of the Court of Common Pleas of the city and county of New York were declared and enumerated in title 5 of the Code of Procedure (§§ 33 and 34). Section 34 is in the following words: "§ 34. The Court of Common Pleas of the city and county of New York shall also have power to review the judgments of the Marine Court of the city of New York, and of the justices' courts in that city." By the act of 1883 (Chap. 26), the name of the Marine Court was changed to the City Court, but it still remained the same court, with the same judges and officers, and the same jurisdiction, and the power to review its judgments continued in the Court of Common Pleas under its original grant of power. By chapter 418 of the Laws of 1886, it was sought indirectly and by language, the full effect of which would not readily be observed by a casual reading, to take from the Court of Common Pleas the important power of reviewing the judgments of the Marine Court, now the City Court, and to authorize an appeal from those judgments direct to the Court of Appeals, without requiring that they should first be subjected to review by the Court of Common Pleas. The enactment is as follows: " § 1. Subdivision 2 of section 191 of chapter 448 of the Laws of 1876, entitled ' An act relating to courts, officers of justice and civil proceedings,' is hereby amended so as to read as follows: 2. An appeal cannot be taken in an action commenced in a court of a justice of the peace, or in a District Court of the city of New York or in the City Court of Yonkers, or in a justice's court of a city, unless the court below allows the appeal by an order made at the General Term, which rendered the determination, or at the next General Term after judgment is entered thereupon. An action discontinued because the answer set forth matter showing that the title to real property came in question, and afterward prosecuted in another court, is not deemed to have been commenced in the court wherein the answer was interposed, within the meaning of this subdivision. The City Court of New York shall be

deemed a superior city court within the meaning of section 190 of the Code of Civil Procedure.

"§ 2. This act shall take effect immediately, but shall not apply to any actions now pending in which the time to appeal has not already expired."

If the act were construed literally, it could not have any operation whatever, for it would have no application to any actions pending at the time of its passage, in which the time to appeal had not then already expired, and it is difficult to suppose any case to which under that restriction it could apply. But reading it as if the word " not " were omitted, it is still subject to the fundamental objection that it contravenes section 12 of article VI of the Constitution by depriving the Court of Common Pleas of its jurisdiction and power to review the judgments of the Marine (City) Court which it possessed at the time of the adoption of the article, and which were thereby rendered permanent and placed beyond the power of the legislature to take from that court.

The act authorizing appeals to this court from the decisions of the General Term of the City Court of Brooklyn (Laws of 1871, chap. 282), and its recognition by this court by entertaining such appeals, are relied upon by the appellants as giving support to their position in the present cases. But we do not see that they affect the question. There is no provision in the Constitution in relation to the Supreme Court which could be construed as restraining the legislature from taking from that court the appellate jurisdiction over the judgments of the City Court of Brooklyn which it possessed in 1869 and 1870, and the question now presented could not arise in respect to the act of 1871, before referred to.

The motions to dismiss the appeals in the above-entitled cases should be granted, but as the question is new, no costs should be allowed to either party.

All concur.

Appeal dismissed.

Upon a motion for re-argument the following opinion was handed down :

Rapallo, J. On the argument of the motion to dismiss the appeal in this case no reference was made to section 22 of article 6 of the Constitution, and a motion for a re-argument is now made, on the ground that the omission was owing to excusable inadvertence of counsel, and that the court was thereby misled.

Section 22 of article 6 provides that " the legislature may authorize the judgments, decrees and decisions of any court of record of original civil jurisdiction established in a city, to be removed for review, directly into the Court of Appeals."

This section, not having been referred to on the argument, was not noticed in the opinion then delivered. As it now appears to be relied upon by the counsel for the appellant, we have examined the question whether it affects the present case, and have come to the conclusion that it does not require us to change our decision.

It will be observed that section 22 applies only to courts of record, and, in our judgment, was intended to embrace only courts of record which were established in cities at the time of the adoption of article 6, viz., in December, 1869. There were at that time in existence, in addition to the Court of Common Pleas and Superior Court of the city of New York, several other local courts established in cities, viz., the Superior Court of the city of Buffalo, the City Court of Brooklyn, which were courts of record, also the Marine Court of the city of New York. The Mayor's Courts of cities, the Recorder's Courts of cities, the District Courts of the city of New York, the Justices Courts of cities, etc.

The Constitution evidently did not contemplate the establishment by the legislature of other Superior City Courts. By section 19 of article 6 the legislature was authorized to establish *inferior* local courts, but the Superior Courts established in cities were enumertated in the Constitution, and their powers and jurisdiction made permanent, but no authority was

given to establish additional Superior Courts in cities; and in *Landers* v. *Staten Island R. R. Co.* (53 N. Y. 450) we held that the legislature had no power to extend the jurisdiction of the City Court of Brooklyn so as to deprive it of its local character.

Section 22 of article 6 was, in our judgment, intended to authorize appeals direct to the Court of Appeals from the courts of record in existence at the time of the adoption of the article, whose judgments were at that time reviewable, in the first instance, in the Supreme Court. The Marine Court of the city of New York was a court of great importance, of ancient origin, and transacting a very large amount of business. Its jurisdiction had been from time to time increased so that although, except in special cases, it was originally limited to $50, it had by degrees grown so as to embrace cases involving $500. Yet it was not a court of record, in the legal sense of the term, until 1872. The power to review its judgments, in the first instance, was vested by law in the Court of Common Pleas, and, as was shown in the first opinion in this case, that power of review of the Court of Common Pleas was, by the Constitution, made permanent. By limiting the power of the legislature to authorize appeals directly to this court, to appeals from judgments of courts of record, we think that it was the intention of section 22 of article 6 to exclude the Marine Court from its operation.

As there is some color for the claim that the Marine Court was a court of record before the passage of the act of 1872, it is necessary, for the purpose of determining that question, to advert briefly to its history.

It is not necessary for the purposes of this case to go further back than the Revised Laws of 1813. Chapter 86 of those laws entitled "An act to reduce several laws relating particularly to the city of New York into one act" (§ 105), authorized the person administering the government of this State, for the time being, by and with the advice and consent of the council of appointment, from time to time to appoint and commission three proper and discreet persons to be known by the name of

justices of the Justice's Court in and for the city and county of New York.   Section 106 enacted that said three justices, or any two of them, should hold a court in the manner therein prescribed, to be known as the justice's court of the city of New York.   Jurisdiction was conferred upon such court to try and determine actions where the amount in controversy should exceed $25, and should not exceed $50.   Also all actions for seamen's wages, or by owners against seamen for breach of contracts for services, notwithstanding that the damages should exceed $50.   Also actions for marine assaults, though the damages should exceed $50, and for the purpose of determining all such actions, the court was vested with all the power and authority of other courts of record in this State, and was declared to be a court of record.   By section 107 such court was declared to be a court of record, and authorized to have a seal, and a clerk to be appointed by the justices.

By section 110 the clerk was required to cause to be entered or registered in proper books, a docket of all summons, warrants, precepts, executions and process issued, and of the returns thereto, and proper entries of all acts, orders dismissing decrees, judgments, adjournments and proceedings of said court, and also the substance of the plaintiff's charge or demand, and of the defendant's plea.   The forms of proceeding were prescribed in subsequent sections, and were similar to those in Justice's Courts.   By chapter 71 of the Laws of 1819 the court was reorganized, and its name was changed to "The Marine Court of the City of New York."

By chapter 149 of the Laws of 1817 the jurisdiction of the court was increased to cases involving $100.   By chapter 389 of the Laws of 1852 it was further increased to $250.   By chapter 617 of the Laws of 1853 to $500, and further enlargements of its jurisdiction were afterward made.   By chapter 144 of the Laws of 1849 (§ 7) section 107 of the act of 1813, which declared the court to be a court of record, and authorized it to have a seal, was totally repealed.   But by chapter 389 of the Laws of 1852 (§ 10) the common council was directed to provide the clerk of

SICKELS — VOL. LVIII.     49

the Marine Court with a seal, with the proviso that nothing in the act contained should authorize said court to issue certificates of naturalization. So much, however, of the repealed section 107 of the act of 1813 as declared the court to be a court of record, was not at that time re-enacted, and at the time of the adoption of article 6 of the Constitution the court remained, so far as respects the question of its being a court of record, as left by the act of 1852.

To constitute a court of record in a legal sense it is not sufficient that the court should have a clerk and a seal. A court of record is defined by Blackstone to be one whose proceedings are enrolled for a perpetual memorial and testimony, which rolls are called the records of the court, and are of such high and super-eminent authority that their truth is not to be called in question. If the existence of a record be denied it shall be tried by nothing but itself, that is, upon bare inspection, whether there be any such record or no. (3 Blackst. Com. 24 ; Coke on Litt. 260*a* and 117*b*.) An order entered in the minutes of such a court is not a record until it has been enrolled. (*Croswell* v. *Byrnes*, 9 Johns. 287.) These rolls or records contain a history of the proceedings to which they relate.

As has already been shown, the revised act organizing the court (2 R. L. 86, § 105, *et seq.*) did not provide for any rolls or records other than the registers directed to be kept by the clerk, containing dockets of the processes issued by the court and minutes of its orders and judgments, and of the substance of the pleadings, which were oral. Written pleadings were not required until 1857 (Laws of 1857, chap. 295), and even these were not required in Marine cases, and there was no provision for judgment-rolls in any case. But after the adoption of article 6 of the Constitution, by chapter 629 of the Laws of 1872 (§ 1) the Marine Court of the city of New York was declared to be a court of record to and for all intents and purposes. Its powers and jurisdiction were continued except as otherwise provided in the act. By subsequent sections the forms of proceedings and remedies prescribed by the Code of Procedure for actions in courts of record including the forms

of pleading, were applied to the Marine Court, and the rules of practice of the Supreme Court were made applicable to it, and in the Code of Civil Procedure of 1877 it was for the first time included in the enumeration of the courts of record of this State.

Before the passage of the act of 1872 the status of the Marine Court as a court of record was considered in several cases. In *Wheaton* v. *Fellows* (23 Wend. 374, 375), which related to the Justice's Court of the city of Albany, the question arose whether that court was a court of record. Its organization was similar to that of the Marine Court. (Laws of 1821, p. 36.) It was composed of three justices, and had a clerk and seal, and was in the act organizing it, declared to be a court of record, but its proceedings were to be the same as those in a Justice's Court. The provisions as to the entry of its proceedings in a register were the same as those in the Marine Court Act of 1813. It was held in the case cited not to be a court of record in a strict legal sense, but only for some special purposes, and a plea of *nil debet* was held good in an action upon a judgment rendered by it, though it would not have been a good plea to an action on a judgment of a court of record.

In *Lester* v. *Redmond* (6 Hill, 590), decided in 1844, a like decision was rendered with reference to the Marine Court of the city of New York, and it was held that that court, although a court of record for certain purposes, was not such in the exercise of its jurisdiction between party and party, and the six years statute of limitations was held to bar an action on its judgments.

In *Ford* v. *Babcock* (1 Denio, 158), decided in 1845, it was held that whoever set up the authority of the Marine Court must show that the case was one of which it had jurisdiction; and in *Huff* v. *Knapp*, chamberlain of the city of New York, decided in 1851, it was held by this court that the Marine Court did not possess the power incident to courts of record to appoint a crier, and had none of the incidental powers of courts of record, it not being a court of record in the strict legal sense of the term.

We do not think, therefore, that section 22 of article 6 of

the Constitution, in speaking of courts of record established in cities, intended to include the Marine Court of the city of New York.

The act of 1886 does not, in terms, authorize appeals direct to this court from the Marine (now the City) Court of the city of New York. It is only by implication that the right is claimed. By the attempt to constitute it a Superior City Court it is supposed that the general provisions authorizing appeals from the Superior City Courts were made applicable to it. We do not discuss that question, nor do we concede that the legislature had power to establish Superior City Courts in addition to those enumerated in the Constitution, its authority in this respect being confined by section 19 of article 6 to the establishment of inferior local courts. The case of *Landers* v. *Staten Island R. R. Co.* (53 N. Y. 450), is apparently adverse to the view that such a power is vested in the legislature.

The motion for a re-argument should be denied, without costs.

All concur.

Motion denied.